**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| STEVEN EDWARDS, | ) | NO. ED CV 14-1798-E |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) | **AND ORDER OF REMAND** |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on September 8, 2014, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on September 29, 2014. Plaintiff filed a motion for summary judgment on

March 11, 2015.  Defendant filed a motion for summary judgment on June 4, 2015.  The Court has taken the motions under submission without oral argument.  See L.R. 7-15; "Order," filed September 15, 2014.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserts disability since July 6, 2011, based primarily on lower back pain and "hereditary neuropathy" (Administrative Record ("A.R.") 221).  At the administrative hearing, Plaintiff testified that he stopped working due to "chronic pain" in his legs (A.R. 32).  Plaintiff further testified that he cannot now work because he has "severe pain throughout [his] body" (i.e., in his legs, back, arms, and shoulders), as well as fatigue, anxiety, and high blood pressure (A.R. 33).  Plaintiff stated that, if he now tried to work,

> I would sit probably for about 10 minutes.  Then I would get pain in my legs and my lower back.  I'd have to get up and move about for about five minutes to walk it off.  My hands go numb from carpal tunnel so I have to get up and shake them off.  My back, just – I have extreme pain so it's very difficult for me to sit.

(A.R. 39).  Plaintiff said he thought he would have to get up and move around for approximately 20 minutes out of every hour (A.R. 40).  Plaintiff said he thought he could lift no more than 10 pounds (A.R. 42).  Plaintiff reportedly could not drive due to numbness in his upper and lower extremities (A.R. 41).  Plaintiff claimed he lies down

three times a day due to fatigue (A.R. 40).[1] Plaintiff's doctors have told Plaintiff that he must deal with the pain and take medication; surgery has not been recommended, except for Plaintiff's "carpal tunnel" (A.R. 40-41).

An Administrative Law Judge ("ALJ") found Plaintiff has "hereditary peripheral neuropathy," lumbosacral disc disease with radiculopathy, hypertension, and bilateral tinnitus, which are severe conditions precluding the performance of any of Plaintiff's past relevant work (A.R. 13, 21). The ALJ also found, however, that Plaintiff retains the residual functional capacity to perform certain light work, including the jobs of "counter clerk" and "furniture rental consultant" (A.R. 17-22 (adopting medical expert testimony at A.R. 36, and vocational expert testimony at A.R. 43-44)).

In concluding that Plaintiff is not disabled, the ALJ found that Plaintiff's testimony regarding his pain and functional limitations was less than fully credible (A.R. 17-21). The only specific reasons the ALJ stated for this finding appear to concern Plaintiff's

///
///
///

---

[1] The medical expert testified that Plaintiff "would be subject to such waxing and waning moments of . . . severe pain that [he] would be liable during an average working day to have moments when [he'd] have to stop working and . . . lie down" (A.R. 38). The vocational expert testified that if a person were off task 20 percent of the time and missed more than two days of work per month there would be no jobs the person could perform (A.R. 45).

treatment history:[2] (1) the lack of "surgical intervention" or a "recommendation for surgical intervention" (A.R. 20-21); and (2) Plaintiff's "use of other treatment modalities," i.e., the alleged fact that Plaintiff's treatment has consisted "primarily" of prescription medications, with "little to no evidence" of additional treatment modalities (such as physical therapy or occupational therapy) (A.R. 21). According to the ALJ, Plaintiff's treatment history suggests his impairments are "not as significant as alleged" (A.R. 20-21).

The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

---

[2] The ALJ also mentioned Plaintiff's work history, but concluded that the work history "bolstered" rather than undercut Plaintiff's credibility (A.R. 20).

>If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

Where, as here, an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause the symptoms alleged (A.R. 17-18), the ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings, supported in the record, to justify discounting such testimony. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must state "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of

///
///
///
///
///

malingering).³  Generalized, conclusory findings do not suffice.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen v. Chater, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also Social Security Ruling 96-7p.  A lack of objective medical evidence to support the alleged severity of a claimant's symptomatology "can be a factor" in rejecting a claimant's credibility, but cannot "form the sole basis."  See Burch

///
///
///
///

---

   ³   In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases).  In the present case, the ALJ's findings are insufficient under either standard, so the distinction between the two standards (if any) is academic.

v. Barnhart, 400 F.3d 676, 681 (2005).[4]

As indicated above, the ALJ discounted the credibility of Plaintiff's testimony regarding symptom severity based on Plaintiff's treatment history, which consisted primarily of prescription medications and assertedly did not include surgery or "other treatment modalities" (A.R. 20-21). On the present record, these stated reasons cannot suffice to support the ALJ's credibility finding.

A limited or conservative course of treatment may sometimes properly discredit a claimant's allegations of disabling symptoms. See, e.g., Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain). In the present case, however, it is uncertain whether Plaintiff's treatment has been truly conservative in nature. Plaintiff was prescribed, inter alia, Cymbalta, Neurontin (Gabapentin), Lisinopril, Flexeril, a Lidoderm (Lidocaine) patch, Motrin (Ibuprofen; 600 milligrams), Naproxen, some chiropractic treatment, some physical therapy, and also has been referred for neurological and orthopedic surgery consultations (A.R. 33, 262, 264, 267, 269, 274-76, 278, 280, 282-85,

---

[4] It is unclear whether, (as Defendant argues), the ALJ expressly relied on "the objective medical evidence" as a specific, stated reason for the credibility finding. See A.R. 17-21. This issue need not be clarified, however, because the objective medical evidence cannot by itself support a credibility finding and, as discussed below, the other reasons stated by the ALJ are legally insufficient.

288, 291, 299, 317, 328-29, 346, 365).  At "Inland Nerological Consultants," Plaintiff was assessed with disturbance of skin sensation and "hereditary peripheral neuropathy" (A.R. 266-67). Plaintiff received prescription medications and orders for lab work and imaging studies (id.).  On follow up, Plaintiff was prescribed physical therapy and more medication, and Plaintiff also was referred for a neuromuscular consultation, pain management and more diagnostic studies (A.R. 278, 282, 284, 288-89, 291).

There is no medical opinion evidence suggesting that Plaintiff's treatment has been so conservative as to betray the non-disabling nature of Plaintiff's symptoms.  See, e.g., Marsh v. Astrue, 2012 WL 4056637, at *5 (W.D. Wash. June 18, 2012), adopted, 2012 WL 4056572 (W.D. Wash. Sept. 14, 2012) (ALJ could not substitute her own lay opinion for medical opinion; record contained no medical opinion evidence that claimant's treatment with Ibuprofen and Gabapentin was conservative or that more aggressive treatment would be effective); but see Nash v. Astrue, 2012 WL 6700582, at *9 (C.D. Cal. Dec. 21, 2012) (declining to "second guess" the ALJ's characterization as "routine conservative treatment" the prescribing of pain medicine, muscle relaxers, Humira injections, Remicade infusions, physical therapy, weight management, healthy diet, home exercise, Suboxone treatment, and acupuncture for pain and ankylosing spondylitis).

Regardless of how Plaintiff's treatment accurately should be characterized, the critical question here is whether substantial evidence supports the ALJ's inference that the lack of more aggressive treatment or surgical intervention suggests that Plaintiff's symptoms

and limitations were not as significant as Plaintiff alleged.  On the present record, this question must be answered in the negative.

The record does not contain any medical evidence that surgical intervention or other aggressive treatment would be an appropriate or effective response to Plaintiff's claimed symptomatology.  Plaintiff's treating osteopath and chiropractor requested approval for orthopedic and neurological consultations (A.R. 262, 343).  The record contains evidence of neurological consultations, but no orthopedic consultations (A.R. 274-91).  It does not appear from the record that Plaintiff has received the orthopedic consultation that Plaintiff's chiropractor requested.  The osteopath referred Plaintiff for a neuromuscular consultation (A.R. 288).  It also does not appear that Plaintiff has received a neuromuscular consultation.

"A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."  Devee v. Colvin, 2014 WL 4220909, at *11 (D. Or. Aug. 25, 2014); see Condon v. Astrue, 780 F. Supp. 2d 831, 837 (N.D. Iowa 2011) (reasoning that the absence from a lengthy medical record of any recommendation for "more aggressive treatment would seem to suggest no more aggressive treatment options exist").  The ALJ was not qualified to determine on her own that Plaintiff had any available non-conservative treatment options.  An ALJ may not rely on his or her own lay opinion regarding medical matters.  See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ who is not qualified as a medical expert cannot make "his own exploration and assessment as to [the] claimant's physical condition"); see also Rohan v. Chater, 98 F.3d 966, 970-71 (7th Cir.

1996) (ALJ may not rely on his or her own lay opinion regarding medical matters); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1995) (same); cf. Rudder v. Colvin, 2014 WL 3773565, at *12 (N.D. Ill. July 30, 2014) ("The ALJ may be correct that disabling limitations from multiple sclerosis would result in more frequent treatment or need for medication.  However, the ALJ must include evidence to support such a conclusion in his opinion because he is not qualified, on his own, to make such determinations.") (citations and quotations omitted).

On the present record, therefore, Plaintiff's failure to receive more aggressive treatment or surgical intervention is an insufficient reason for discounting Plaintiff's credibility.  See Matamoros v. Colvin, 2014 WL 1682062, at *4 (C.D. Cal. April 28, 2014) ("The ALJ cannot fault [the claimant] for failing to pursue non-conservative treatment options if none exist.") (citation omitted); Clark v. Astrue, 2013 WL 254065, at *12 (D. Ariz. Jan. 23, 2013) ("There is no evidence in the record that Plaintiff was prescribed a TENS unit, cane, walker, wheelchair, or directed to use a heating pad and thus the ALJ's speculation that Plaintiff should have used those or other 'treatment modalities' is not a clear and convincing reason for discounting her credibility."); Townson v. Astrue, 2010 WL 2077187, at *15 (D. Kan. May 25, 2010) ("[O]n this record, it is speculative for the ALJ to assume that if claimant were as disabled as he claims, his doctors would have ordered more aggressive treatment. . . .  This comment assumes that plaintiff's doctors disbelieved plaintiff's pain complaints, when the record does not show that they did.") (citations and quotations omitted).

1    In attempting to defend the ALJ's adverse credibility finding,
2 Defendant cites specific examples from the medical record which
3 arguably contradict Plaintiff's claimed limitations. See Defendant's
4 Motion, p. 7. Defendant further suggests that a January, 2013
5 admission by Plaintiff regarding the effectiveness of a medication
6 also contradicts Plaintiff's claimed limitations. See Defendant's
7 Motion, p. 8. This attempted defense of the ALJ's credibility finding
8 must fail. Defendant cannot properly suggest specifics the ALJ failed
9 to state expressly as reasons for rejecting Plaintiff's credibility.
10 See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (court
11 "cannot affirm the decision of an agency on a ground that the agency
12 did not invoke in making its decision"); see also Treichler v.
13 Commissioner, 775 F.3d at 1102 (for meaningful appellate review, "we
14 require the ALJ to specifically identify the testimony . . . she or he
15 finds not credible . . . and explain what evidence undermines the
16 testimony") (citations and quotations omitted).

    Because the circumstances of this case suggest that further
administrative review could remedy the ALJ's errors, remand is
appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see
Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett")
(remand is an option where the ALJ fails to state sufficient reasons
for rejecting a claimant's excess symptom testimony); but see Orn v.
Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (citing Connett for the
proposition that "[w]hen an ALJ's reasons for rejecting the claimant's
testimony are legally insufficient and it is clear from the record
that the ALJ would be required to determine the claimant disabled if
he had credited the claimant's testimony, we remand for a calculation

11

of benefits") (quotations omitted); see also Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014) (remanding for further proceedings where the ALJ failed to state sufficient reasons for deeming a claimant's testimony not credible); Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014) (court may "remand for further proceedings, even though all conditions of the credit-as-true rule are satisfied, [when] an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled"); Vasquez v. Astrue, 572 F.3d 586, 600-01 (9th Cir. 2009) (a court need not "credit as true" improperly rejected claimant testimony where there are outstanding issues that must be resolved before a proper disability determination can be made); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is to remand for additional agency investigation or explanation, except in rare circumstances); Treichler v. Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases").[5]

///
///
///
///
///
///

---

[5] There are outstanding issues that must be resolved before a proper disability determination can be made in the present case. For example, it is not clear whether the ALJ would be required to find Plaintiff disabled for the entire claimed period of disability even if Plaintiff's testimony were fully credited. See Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

**CONCLUSION**

For all of the foregoing reasons,[6] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 14, 2015.

                                    /s/
                              CHARLES F. EICK
                         UNITED STATES MAGISTRATE JUDGE

---

[6] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled." See Garrison v. Colvin, 759 F.3d at 1021.